Filed 12/29/23  P. v. Keller CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JUSTIN WADE KELLER,<br><br>Defendant and Appellant. | A155572<br><br>(Contra Costa County<br>Super. Ct. No. 5-180748-6) |

A jury found Justin Wade Keller guilty of second degree burglary. On appeal, Keller claims the trial court violated his constitutional rights by failing to dismiss jurors who were "tainted" by his counsel's mention of a prior burglary conviction during voir dire. He also contends the trial court committed prejudicial error by admitting evidence of the conduct underlying his prior conviction to prove intent (Evid. Code,[1] § 1101, subd. (b)). Finally, he claims trial counsel failed to provide effective assistance by incorrectly conceding that intent was at issue in his case. We disagree with these contentions and affirm Keller's conviction.

---

[1] Undesignated statutory references are to the Evidence Code.

# BACKGROUND

At around 1:00 a.m. on April 9, 2018, an alarm sounded at TJ's Cafe in Martinez. One of the cafe's glass front doors was shattered and its cash register was emptied. Cash was "thrown about inside." An officer found Keller walking nearby. Keller had blood on his hands and shirt, shards of glass on his hands and shoes, and a set of keys at his feet. He had $127 in $1, $5, and $10 bills in his pocket. Two bloody bills were in some bushes nearby. The cafe owner met responding officers at the scene and recognized the keys as belonging to the cafe. The $127 was the same amount of cash in the same denominations typically left in the register at closing.

Keller was charged with the burglary of TJ's Cafe and pled not guilty. Keller claimed that he was walking to a 7-Eleven store on the night of the burglary and saw another person get out of a car and break into the cafe. This person got back in the car and departed. Keller then approached the cafe because he "figured that maybe [he] would find something . . . where the person was running," and he picked up a few bills along with the keys. He "made off for it like a fool" and was promptly detained. But he "[a]bsolutely [did] not" cross the threshold of TJ's Cafe.

## A. *The Trial Court's Rulings Concerning a 2017 Burglary*

During motions in limine, the trial court made two rulings regarding a June 2017 commercial burglary and Keller's October 2017 conviction for that offense. The first was a denial of the People's motion to use the conviction to impeach Keller's credibility. The court recognized that a felony conviction for burglary constituted an offense involving moral turpitude and was appropriate material for impeachment, but considered the factors under section 352 and found that "it's too similar [to the conduct alleged in the

2

instant case]" and "would lead the jury to convict Mr. Keller, in part, based on the fact that he [had] this conviction in the past."[2]

The People also sought to introduce Keller's conduct underlying the 2017 burglary conviction as part of its case-in-chief pursuant to section 1101, subdivision (b), to prove intent as to the burglary of TJ's Cafe. Keller's counsel acknowledged that "intent may be is an issue," but argued that the prejudicial impact of this evidence would be "substantial," referring back to the court's "concern about the prejudicial impact of the conviction." The trial court acknowledged the evidence was "prejudicial," but stated that Keller's "not-guilty plea puts at issue all of the elements in the crime," including intent. The court ruled that the evidence would be admissible pursuant to section 1101, subdivision (b). The court reminded counsel that evidence Keller was *convicted* of the 2017 offense would not be permitted.

### B. *Keller's Counsel Raises the Burglary Conviction During Voir Dire*

During voir dire, Keller's counsel told prospective jurors that "you're going to hear in this case that Mr. Keller was involved in another incident about a year ago[,] . . . and I want to ask you if that would have any effect on your thoughts of this case." Counsel explained it was a "similar" incident "involving a burglary of a business," then despite the court's in limine ruling that the conviction would not be admissible, volunteered that Keller "was convicted for it, as well" and asked prospective jurors if that "ma[d]e a

---

[2] Keller had a second felony conviction, for a violation of Vehicle Code section 10851, subdivision (a), which the trial court also recognized involved moral turpitude. The court ruled that should Keller take the stand, the People could impeach his credibility by introducing evidence of his conviction for this violation, which the court referred to as for "auto theft."

difference" to them. Several prospective jurors gave responses suggesting that it might.

Outside the jury's presence, the trial court expressed "bewilderment as to why the defense counsel would mention that the jury would hear that Mr. Keller was convicted of the commercial burglary." The court reiterated its rulings that the conviction would not come in to evidence and the underlying conduct alone would be introduced under section 1101, subdivision (b). The court expressed concern as to whether Keller could receive a fair trial and asked counsel, "you realize that I can declare a mistrial right now based on what I believe happened?"

In light of the trial court's concerns, the court reporter read back the exchanges between Keller's counsel and the prospective jurors. The court concluded that only two prospective jurors said they could not be fair. The court continued, "I remember more people expressing more concern. So to that extent, I stand corrected. [¶] I am open to bringing the jury back and questioning them as to whether they can be fair if there's no evidence of any conviction." Keller's counsel responded that he was concerned about "highlighting" the prior offense. The People proposed instructing the prospective jurors as to the limited purpose for which they could consider the prior offense using CALCRIM No. 375 and asking them if they could follow that instruction. Keller's counsel did not object to this approach or ask the court to dismiss all of the prospective jurors who had heard his comments.

C. *The Court Admonishes the Jury Regarding the 2017 Burglary*

The prospective jurors returned to the courtroom for further voir dire and the court excused several of them, including the two the court had concluded could not be fair. The court read CALCRIM No. 375 and asked if

4

there was "anyone that cannot be fair to Mr. Keller . . . based on what they learned regarding the 2017 commercial burglary?"[3] No one responded.

Voir dire continued. Counsel for both sides declined to challenge additional prospective jurors for cause. Counsel exercised peremptory challenges, but neither side exhausted its allotment of ten challenges. A jury was impaneled and neither side objected to its composition.

**D.** *Evidence of the 2017 Burglary Is Presented at Trial*

At trial, a responding officer testified about Keller's conduct during the 2017 burglary. Keller took the stand and volunteered that he was convicted for that offense. After the close of the evidence, the trial court instructed the jury using CALCRIM No. 375 again, including the instruction that that the jury not consider the 2017 burglary "except for the limited purpose of determining whether the defendant had the intent required to find him guilty of burglary as charged" and not consider the 2017 burglary to conclude "that the defendant has a bad character or is disposed to commit crime."

The jury convicted Keller and this appeal followed.

---

[3] The trial court explained that if the jury found by a preponderance of evidence that the defendant committed the prior offense they may, but were not required to, consider that evidence for the limited purpose of deciding whether the defendant acted with a required intent in this case. The court also told the prospective jurors, "Do not consider this evidence for any other purpose except for the limited purpose of determining whether in this case he acted with the required intent. [¶] . . . [I]f you receive this evidence, do not conclude from this evidence the defendant has a bad character or is exposed [*sic*] to commit crimes. [¶] If you conclude that the defendant committed the uncharged offense last year, that . . . conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of this charge here. [¶] The People must still prove the charge here beyond a reasonable doubt, which is a different standard."

## DISCUSSION

### 1. *Keller Forfeited Any Challenge to the Composition of the Jury*

Keller argues the trial court erred when it failed to dismiss all prospective jurors who heard about his 2017 burglary conviction, or at least to question all of them about it, including those who were not sitting in the jury box when the court addressed the issue. Keller has forfeited these arguments.

Criminal defendants are constitutionally entitled to a trial before an impartial jury. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 16; *In re Hamilton* (1999) 20 Cal.4th 273, 293–294 (*Hamilton*).) Jurors' receipt of information about the case outside the trial evidence may establish bias. (*People v. Nesler* (1997) 16 Cal.4th 561, 578.) However, "[v]oir dire is the crucial means for discovery of . . . juror bias." (*Hamilton, supra,* 20 Cal.4th at p. 295.) Defendants have the right during jury selection "to challenge and excuse candidates who clearly or potentially cannot be fair." (*Ibid.*)

To preserve a claim of juror bias, a defendant must exhaust all peremptory challenges and express dissatisfaction with the jury as finally constituted. (*People v. Westerfield* (2019) 6 Cal.5th 632, 665.) Keller did not meet these requirements. He raised no challenges for cause after the trial court admonished the potential jurors about the 2017 burglary. He did not exhaust his peremptory challenges, and he did not express dissatisfaction with the final composition of the jury. Keller's claim that jurors were biased is accordingly forfeited. (*People v. Romero and Self* (2015) 62 Cal.4th 1, 44.)

Any argument that the trial court had a sua sponte duty to excuse potentially biased jurors or was bound to do so because it expressed concern at defense counsel's statements is also without merit. (*People v. Bolin* (1998) 18 Cal.4th 297, 315–316.) Here, "the court questioned the jurors . . . and

admonished them. At no time did defense counsel propose additional questions, object to any juror's continued service," or request that all potential jurors who heard about the 2017 conviction be dismissed.[4] (*People v. Foster* (2010) 50 Cal.4th 1301, 1341.) Keller forfeited any claim of prejudice due to jurors' exposure to this information. (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1169–1170.)

Even if Keller had preserved the issue for appeal, we would reject the claim on the merits. After Keller's lawyer disclosed the prior burglary conviction to the prospective jurors, the trial court properly admonished them by reading CALCRIM No. 375 and asked them to notify the court if they had any doubt about following that instruction. No one responded. Keller's counsel had ample opportunity to ask further questions of the panel and to excuse jurors using peremptory challenges. The record does not reveal any lingering "taint" warranting reversal.

## 2. *The Trial Court Properly Admitted Evidence of the 2017 Burglary*

Keller contends the trial court erred by admitting evidence of the 2017 burglary to prove intent. He claims intent was not at issue because his defense was based on identity, and any probative value this evidence had was outweighed by the prejudice it caused. Keller contends the court's error violated his constitutional right to due process because evidence of the 2017 burglary was not admissible for any statutory purpose. He further claims trial counsel was ineffective because, although he objected that the evidence

---

[4] The trial court's comment that Keller's counsel "cannot voir dire any of the other jurors about the word conviction with respect to other conduct" was merely a warning not to raise the issue again after the court gave the contemplated admonishment. Keller's counsel had not requested and did not request permission to voir dire any prospective jurors about this issue.

7

was prejudicial, he conceded that intent was an issue in the case. Section 1101 states that although evidence of a person's character is inadmissible to prove conduct on a specific occasion, "evidence that a person committed a crime" is admissible "when relevant to prove some fact . . . other than his or her disposition to commit such an act," including intent. (§ 1101, subd. (b).) Still, the court may exclude such evidence under section 352 if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice, among other factors. (§ 352.) We review a trial court's decision to admit evidence under sections 1101 and 352 for abuse of discretion. (*People v. Thomas* (2023) 14 Cal.5th 327, 358.)

As to relevance, the trial court correctly determined that Keller's "not-guilty plea puts at issue all of the elements in the crime," including intent. Our high court "ha[s] repeatedly noted" this point: While the defense might focus on identity, this does not eliminate the prosecution's burden to establish all elements of a crime, including intent, beyond a reasonable doubt, and the prosecution has the right to introduce all relevant and admissible evidence towards that end even when other evidence is present. (*People v. Chhoun* (2021) 11 Cal.5th 1, 29 (*Chhoun*); *People v. Jones* (2011) 51 Cal.4th 346, 372 (*Jones*) [" '[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense' "].) Here, the 2017 burglary was similar enough to the charged offense to support the inference that Keller probably harbored the same intent in each instance—which Keller does not dispute. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*) [least degree of similarity between the uncharged act and the charged offense is required to prove intent].)

However, even though prior conduct may be relevant under section 1101, subdivision (b), the trial court must still weigh the probative value of the evidence under section 352. Section 352 gives the trial court discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

We find no abuse of discretion in the trial court's ruling under section 352. The 2017 burglary had probative value because intent was disputed and had to be proven by circumstantial evidence. That probative value was enhanced because its source—testimony by an officer uninvolved in investigating the charged crime—was wholly independent of the evidence of the charged offense, and the prior offense occurred not long before the charged one. (*Ewoldt*, *supra*, 7 Cal.4th at pp. 404–405.)

Keller's contrary argument is based on *Ewoldt*, which held that evidence of prior misconduct was admissible to show a common design or plan, but not to prove lewd intent that could not reasonably be disputed given the facts of the charged crime (involving molestation of a child). (*Ewoldt*, *supra*, 7 Cal.4th at pp. 404–406.) *Ewoldt* explained that evidence of prior acts must have substantial probative value to be admitted and cannot be "merely cumulative regarding an issue that was not reasonably subject to dispute." (*Id.* at pp. 404, 406.)

Here, the evidence of the 2017 offense was not cumulative because the intent of the person who broke into TJ's Cafe was not beyond dispute. There was no concession by Keller's counsel as to intent, and the jury would have to infer intent from the circumstances of the break-in, including the missing cash. (See *Chhoun*, *supra*, 11 Cal.5th at p. 29; *People v. Scott* (2015)

9

61 Cal.4th 363, 399–400 [evidence of other burglaries by defendant was not cumulative of evidence wallet went missing during the charged crime]; *Jones, supra*, 51 Cal.4th at p. 372 [evidence of prior robbery by defendant admissible to prove intent despite other undisputed evidence that perpetrator meant to rob residence].)[5]

The trial court did not abuse its discretion by concluding that the probative value of this evidence was not outweighed by a danger of undue prejudice or confusion. Prejudice was not undue because both the 2017 burglary and the instant offense were thefts from unoccupied commercial establishments. There were no allegations of use of weapons, threats or bodily injury to a third party, or assault. The evidence of the uncharged offense was no stronger or more inflammatory than the evidence of the charged offense. (*Ewoldt, supra*, 7 Cal.4th at p. 405.) And there was little danger that the jury would be inclined to punish Keller for the prior offense since it knew the testifying officer had investigated it and Keller later volunteered that he had been "convicted" for it. (See *Jones, supra*, 51 Cal.4th at pp. 371–372.)

---

[5] We are unpersuaded by Keller's citation of dicta in *Ewoldt* suggesting that in most cases where it is undisputed a burglary occurred and the main issue is the perpetrator's identity, evidence of uncharged offenses should not be admitted unless those offenses were similar enough to the charged offense to establish identity. (*Ewoldt, supra*, 7 Cal.4th at p. 406.) More recent opinions by our high court clarify that the People's burden to prove intent may justify admitting evidence of uncharged offenses even where the defense argues on appeal that only identity was at issue at trial, circumstances of the charged offense tended to show intent, and the defense chose not to contest intent at trial. (See *Jones, supra*, 51 Cal.4th at p. 372.)

In addition, the trial court read limiting instructions directing the jury not to use the evidence for an improper purpose, including bad character. We presume the jury followed these instructions. (*Chhoun, supra,* 11 Cal.5th at p. 30.) Thus, we do not find that there was a danger that the jury would be confused or misled.

In sum, the trial court did not abuse its discretion by admitting evidence of the 2017 burglary. Because the court made no error under state law, Keller's constitutional claim also fails. (*Chhoun, supra,* 11 Cal.5th at p. 26.) And since intent was clearly at issue in the case, Keller's counsel was not ineffective in acknowledging that intent "may be" at issue. (See *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1140 [failure to make an objection that would have been unavailing does not constitute ineffective assistance of counsel].)[6]

Finally, even if the court abused its discretion in declining to exclude evidence of the 2017 burglary under section 352, such error was harmless under *People v. Watson* (1956) 46 Cal.2d 818 because it was not " 'reasonably probable' " Keller would have received a more favorable result had the evidence been excluded. (*People v. Johnson* (2022) 12 Cal.5th 544, 611.) The

---

[6] Keller asserts that his trial counsel committed ineffective assistance of counsel by "conceding" that intent was at issue. This argument mischaracterizes the record. At most, defense counsel acknowledged that intent "may be" an issue and failed to offer a stipulation to intent. But even if defense counsel had offered a stipulation to preclude the prosecution from presenting the 2017 burglary, our Supreme Court has ruled that a trial court may not forbid the prosecution from offering uncharged misconduct by requiring it to accept a stipulation. (*People v. Rogers* (2013) 57 Cal.4th 296, 329 ["A trial court cannot compel a prosecutor to accept a stipulation that would deprive the state's case of its evidentiary persuasiveness or forcefulness."].) For these reasons, the claim of ineffective assistance of counsel fails.

evidence tying Keller to the burglary was strong, and it was inconsistent with his testimony that he never entered the cafe. Responding officers testified that Keller had wet blood on his hands, glass on his hands and shoes, keys from the cafe, and over a hundred dollars in small bills when he was apprehended. Keller offered several different, improbable explanations for the blood (he had just been in a fight), the cash (he had collected money from his friend's girlfriend, a Coinstar machine, and elsewhere to bail his friend out of jail, all in small denominations), and his presence in the area (he wanted to buy a portable charger for his phone because the power was out). He admitted he told an officer at the scene "I wish I knew why glass was on my hands," but claimed he was being "sarcastic." He admitted he had the keys from the cafe and said he did not know why he had picked them up. The People properly impeached Keller's testimony with evidence of his recent conviction for driving a stolen vehicle. Given the strong evidence that Keller did break into the cafe and his unimpressive testimony on his own behalf, we see no reasonable probability that the jury would have reached a different outcome had the trial court excluded evidence of the 2017 burglary.

## DISPOSITION

The judgment is affirmed.

HIRAMOTO, J.*

WE CONCUR:

STREETER, ACTING P. J.

GOLDMAN, J.

*People v. Keller* (A155572)

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13